1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

CITY OF MOSES LAKE,
a Washington municipal corporation,    )    No. CV-04-0376-AAM
                                        )
                                        )    **ORDER DENYING**
                                        )    **MOTION TO ALTER**
                      Plaintiff,        )    **OR AMEND ORDER**
                                        )
            vs.                         )
                                        )
The UNITED STATES OF                    )
AMERICA, et al.,                        )
                                        )
                                        )
                                        )
                      Defendants.       )
_____)

17    **BEFORE THE COURT** is the Fed. R. Civ. P. 59(e) "Motion To Alter Or

18    Amend The Order Granting Lockheed's Motion For Summary Judgment, *Inter Alia*"

19    (Ct. Rec. 358) filed by Plaintiff City of Moses Lake (Moses Lake). This motion was

20    heard without oral argument. The State of Washington Department of Ecology

21    (DOE) filed *amicus curiae* briefs on behalf of Moses Lake which the court considered

22    in rendering its decision.

23

24    **I. BACKGROUND**

25          On October 16, 2006, this court entered an order (Ct. Rec. 354) in which it

26    granted summary judgment to Defendant Lockheed Martin Corporation (Lockheed),

27    finding that Moses Lake is barred under the CERCLA and MTCA statutes of

28    limitations from recovering response costs incurred between 1989 and 1994. Moses

**ORDER DENYING MOTION
TO ALTER OR AMEND ORDER- 1**

Lake now asks the court to reconsider that finding, contending the court committed "clear error."[1]

## II.  RECONSIDERATION STANDARD

" '[T]he major grounds that justify reconsideration involve an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Pyramid Lake Paiute Tribe v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4478, at 790); see *Frederick S. Wyle P.C. v. Texaco, Inc*., 764 F.2d 604, 609 (9th Cir. 1985); see also *Keene Corp. v. International Fidelity Ins. Co*., 561 F. Supp. 656, 665 (N.D. Ill. 1982) (reconsideration available "to correct manifest errors of law or fact or to present newly discovered evidence").  Such motions are not the proper vehicle for offering evidence or theories of law that were available to the party at the time of the initial ruling.  *Fay Corp. v. Bat Holdings I, Inc.*, 651 F. Supp. 307, 309 (W.D. Wash. 1987); see *Keene Corp.*, 561 F. Supp. at 665-66.

## III.  DISCUSSION

### A.  Lockheed As A PRP (Potentially Responsible Party)

Moses Lake contends this court committed a "clear error" because in making its finding that Moses Lake's recovery of response costs incurred between 1989 and 1994 is time-barred, the court relied upon a fact that is not true, specifically that Lockheed was named a PRP by the EPA in October 1992.

/ / /

---

[1]  Moses Lake does not ask the court to reconsider its finding that certain costs incurred after 1994 were not "necessary" and therefore, not recoverable under CERCLA and MTCA.

**ORDER DENYING MOTION
TO ALTER OR AMEND ORDER- 2**

The court acknowledges that Lockheed was not named a PRP by the EPA in October 1992. In October 1992, EPA placed the Moses Lake Wellfield Contamination Superfund Site on the NPL. In July 1993, Boeing received a "General Notice" letter from EPA informing Boeing that EPA believed Boeing was a potentially responsible party under 42 U.S.C. §9607(a). (Ex. 6 to Ct. Rec. 215, Declaration of Steven G. Jones).[2] Moses Lake entered into a tolling agreement with Boeing in August 1993. According to Moses Lake, Lockheed, unlike Boeing, has never received a "General Notice" letter from EPA, but only information requests pursuant to 42 U.S.C. §9604(e) in May 1994, and again in May 1997. It is also true, however, that Martin Marietta Corporation, the predecessor-in-interest to Lockheed, was included in EPA's "PRP Information for the Moses Lake Wellfield Superfund Site" as early as June 1994. (Ex. 1 to Ct. Rec. 215 at pp. 21-22).

The court's error in stating Lockheed was named a PRP in October 1992 is not a material error. Whether or not Lockheed was named a PRP as of October 1992, and therefore, whether or not Moses Lake can be faulted for not entering into a tolling agreement with Lockheed, the fact remains that recovery of response costs incurred by Moses Lake is time-barred for the reasons stated in pp. 10-23 of the court's order. In the absence of a tolling agreement, Moses Lake had to initiate a civil action no later than 1997 in order to recover response costs incurred between 1989 and 1994, and it did not do so until 2004. The running of the CERCLA and MTCA statutes of limitations depends not on "notice," but rather when certain events occurred.

Moreover, although Lockheed may not have received a "General Notice" letter through 1997, Moses Lake does not deny that it knew EPA had requested information from Lockheed in April 1994, and had named Lockheed's predecessor-in-interest, Martin Marietta Corporation, in the aforementioned June 1994 "PRP Information for

---

[2] CERCLA uses the term "Potentially Responsible Party" (PRP), whereas MTCA uses the term "Potentially Liable Party" (PLP).

**ORDER DENYING MOTION**
**TO ALTER OR AMEND ORDER- 3**

the Moses Lake Wellfield Superfund Site." Nevertheless, Moses Lake did not seek a tolling agreement with Lockheed.

**B. CERCLA**

Moses Lake contends the court committed a "clear error" in failing to find, per *California Department of Toxic Substances v. Neville*, 358 F.3d 661, 663 (9th Cir. 2004), that CERCLA's six year statute of limitations applicable to "remedial action" will not commence running until EPA, via issuance of a ROD (Record of Decision), approves the final "remedial action plan" for the Moses Lake Wellfield Contamination Superfund Site. This court found: 1) *Neville* does not apply because what Moses Lake did between 1989 and 1994 in cleaning up its wells constituted "removal" action, an interim response to minimize and stabilize imminent harms to human health, and therefore, CERCLA's three year statute of limitations applicable to "removal" action commenced running in 1994 and expired in 1997[3]; or

---

[3] Moses Lake asserts: "[T]he court's finding that the wells were sealed off from the shallow aquifer and drilled deeper 'to remedy the TCE contamination' is not accurate," citing the court's October 16, 2006 Order at p. 18, n. 14. Says Moses Lake, "[t]hat contamination has yet to be remedied and is still being investigated some 15 years after the Site [Moses Lake Wellfield Contamination Superfund Site] was placed on the NPL."

At p. 18, n. 14 of its Order, this court stated:

> The **wells** previously drew water from the Roza 1 aquifer, the shallower portion of the aquifer. To remedy the TCE contamination problem **in those wells**, **the wells** were sealed off from the shallow aquifer and drilled into the deeper Roza 2 aquifer.

(Emphasis added). This finding is accurate because Moses Lake did in fact, by 1994, remedy the TCE contamination problem in its Larson System wells. This is

**ORDER DENYING MOTION
TO ALTER OR AMEND ORDER- 4**

1    alternatively, 2) *Neville* is distinguishable for the reason that what Moses Lake did

2    between 1989 and 1994 was a private party cleanup, an independent "remedial

3    action" conducted without governmental or agency oversight, and therefore, the six

4    year statute of limitations commenced upon issuance of Moses Lake's private

5    "remedial action plan," that being the Golder Study.

6          Moses Lake offers no compelling reason why this finding constitutes a "clear

7    error."  If what Moses Lake did between 1989 and 1994 was a "remedial action," this

8    court did not clearly err in finding that said "remedial action" was independent in that

9    it was conducted without agency or government oversight and therefore, it is not

10   necessary to await issuance of the ROD by EPA for the six year statute of limitations

11   to commence.  The lack of "clear error" is revealed by the Ninth Circuit's observation

12   in *Neville* that in cases where private parties conduct a cleanup without governmental

13   or agency oversight and then pursue response costs under CERCLA, "there will most

14   likely still be a remedial action plan in place."  It is also revealed by the circuit

15   expressly declining to address the limitations period applicable to a non-

16   governmental response cost suit.  *Neville*, 358 F.3d at 671, n. 3.

17         Moses Lake asserts the court's finding is not only contrary to *Neville*, but also

18   to this court's previous determinations in this case and the language of the statute of

19   limitations found at 42 U.S.C. §9613(g)(2)(B).  §9613(g)(2)(B) provides that an

20   initial action for recovery of the costs referred to in §9607 must be commenced-

21                        [F]or a remedial action, within 6 years after initiation
                          of physical on-site construction of the remedial action,
22

23   ───────────────────────────

24   what this court found to be either a "removal" action within the framework of a
     larger "remedial action" by the EPA to remedy TCE contamination in the aquifer
25   as a whole (Roza 1 and Roza 2 together), or alternatively, an independent
     "remedial action" by Moses Lake limited to remedying the TCE contamination in
26   its Larson System wells.  Provision of alternative water supplies can be either a
     "removal" action, or a "remedial action" under CERCLA.  42 U.S.C. §9601(23)
27   and (24).
28

**ORDER DENYING MOTION**
**TO ALTER OR AMEND ORDER- 5**

1    except that, **if the remedial action is initiated within**
2    **3 years after completion of the removal action, costs**
     **incurred in the removal action may be recovered in**
3    **the cost recovery action brought under this sub-**
     **paragraph**.

4    (Emphasis added).

5        According to Moses Lake, this court has held that EPA's conduct since it listed

6    the Moses Lake Wellfield Contamination Superfund Site on the NPL in 1992

7    constitutes "remedial action," citing the court's October 16, 2006 Order at p.15, n. 12.

8    Therefore, says Moses Lake, " it is the law of this case that EPA initiated a 'remedial

9    action' that could have commenced as early as 1988, but which surely commenced

10   by 1992, and that will not conclude until the formal publication of EPA's Record of

11   Decision."    According to Moses Lake, "[t]hese facts make subsection (g)(2)(B)

12   applicable to any removal action commenced within that time frame," and since its

13   "removal action falls within that window, the operative statute of limitations will not

14   commence until EPA's current remedial action is completed, i.e., after the ROD is

15   published."

16       This court has not held that EPA's conduct since 1992 constitutes "remedial

17   action" on its part.  At p. 15, n. 12 of its October 16 Order, this court quoted from its

18   December 30, 2005 "Order Granting Motions To Amend Complaint And For

19   Preliminary Injunction" (Ct. Rec. 181), in which it held that EPA's Proposed Plan

20   constitutes "remedial action." EPA was enjoined from issuing its Final Proposed Plan

21   and that injunction remains in effect to this day.  The Final Proposed Plan has not

22   been formally issued.  In the December 30, 2005 order, the court directed that EPA

23   provide Moses Lake with a copy of the Draft Proposed Plan.  It is from the Final

24   Proposed Plan that EPA will select a remedy to address TCE contamination in the

25   Moses Lake Wellfield Contamination Superfund Site (i.e., the entire aquifer).  In its

26   December 30, 2005 order, this court recognized the holding in *Neville* that for an

27   action to be "remedial," a permanent remedy must have already been adopted, and in

28   most cases, a permanent remedy is not adopted until a final remedial action plan has

**ORDER DENYING MOTION**
**TO ALTER OR AMEND ORDER- 6**

1  been approved.  Nevertheless, this court went on to find that EPA's Final Proposed
2  Plan will constitute "remedial action" because it is "consistent with permanent
3  remedy," even though it precedes EPA's selection, through a ROD, of a remedy for
4  TCE contamination in the aquifer.

5      This finding does not benefit Moses Lake concerning application of 42 U.S.C.
6  §9613(g)(2)(B).  EPA has yet to initiate its "remedial action" with regard to the
7  Moses Lake Wellfield Contamination Superfund Site because it has yet to issue its
8  Final Proposed Plan and has yet to select a permanent remedy for the contamination
9  in the aquifer.  Therefore, it is impossible to find that EPA initiated a "remedial
10 action" within three years of Moses Lake's completion of  its  "removal" action in
11 1994. If, on the other hand, what Moses Lake did between 1989 and 1994 constitutes
12 a private party, independent "remedial action" to remedy TCE contamination in
13 particular wells, as contrasted with EPA's forthcoming "remedial action" to remedy
14 TCE contamination in the entire aquifer, the six year statute of limitations specified
15 in §9613(g)(2)(B) for initiating a cost recovery action, commenced running when
16 Moses Lake adopted its own final "remedial action plan" in October 1991, that being
17 the Golder Study.

18     Moses Lake contends the court's finding that the Golder Study constituted
19 Moses Lake's "remedial action plan" is a "clear error" because it was only a study
20 which evaluated the "subsurface conditions in the Larson area . . . the specific
21 problems of the City's Larson production wells . . . [and] future groundwater
22 development options for the Larson area." (Ex. 17a to Ct. Rec. 248, Declaration of
23 Chris Costanzo, at p.1).  Moses Lake asserts the Golder Study was never designed as
24 an "action plan" for remediation of the Moses Lake Wellfield Contamination
25 Superfund Site, but only analyzed contamination as to its effect on Moses Lake's
26 Larson System wells.  The court agrees that the Golder Study did not address the
27 contamination problem of the entire aquifer and limited itself to addressing the
28 problem in Moses Lake's Larson System wells.  This court never said the Golder

**ORDER DENYING MOTION**
**TO ALTER OR AMEND ORDER- 7**

Study was intended to address the problem existing within the entire aquifer. Indeed, the Golder Study was issued in October 1991, one year before EPA even placed the Moses Lake Wellfield Contamination Superfund Site on the NPL. The Golder Study proposed options to assure a clean water supply to the Larson System of wells and Moses Lake acted upon the options presented which included modification of existing production wells. (Ex. 17a to Ct. Rec. 248, Declaration of Chris Costanzo, at p.54). Among the "Long-Term Remedial Alternatives" proposed by the Golder Study in October 1991 was modification of ML 21 and ML 28. (*Id*.). Subsequently, ML 21 and ML 28 were modified (ML 28 was sealed off permanently from the upper Roza 1 aquifer between April and November 1992; ML 21 was sealed off permanently from the upper Roza 1 aquifer between May 1993 and January 1994). (See p. 7 of October 16, 2006 Order, including n. 5).

Prior to the Golder Study, in April 1989, the Acting Municipal Services Director for Moses Lake provided the City Manager with a plan known as the "Larson Potable Water Supply Project" (aka "Larson Project") which called for sealing off ML 22 from the upper Roza 1 aquifer, repairing an old well (ML 29) to increase production capacity, and constructing a reservoir (Reservoir 7) to create additional production capacity. (October 16, 2006 Order at pp. 4-5). ML 22 was subsequently sealed prior to issuance of the Golder Study in October 1991, but was eventually taken out of service as a production well for reasons specified in the Golder Study at p. 52 (casing deviation and a severe dog-leg in the well). DOH test results for ML 22 end in 1991. (October 16, 2006 Order at p. 7). The repairs on ML 29 began in March 1989 and were completed on May 15, 1989. (*Id*. at p. 5, n. 3). Construction of Reservoir 7 began in October 1991 (the same month the Golder Study was issued) and was completed in August 1992. (*Id*. at p. 5, n. 4).

If the Golder Study was not Moses Lake's "remedial action plan," then the April 1989 "Larson Potable Water Supply Project" was, or arguably a combination of the two comprised Moses Lake's "remedial action plan," setting forth a permanent

**ORDER DENYING MOTION**
**TO ALTER OR AMEND ORDER- 8**

remedy to restore potable water in the Larson System of wells. If Moses Lake's "remedial action plan" was in place in April 1989, then if *Neville* applies to non-governmental cost response suits, the six year limitations period commenced in April 1989, roughly at the same time there was initiation of physical on-site construction of the "remedial action," that being the repair of ML 29.

In finding the Golder Study constituted the City's "remedial action plan," this court assumed *Neville's* rule applies to a non-governmental response cost suit and therefore, a private party "remedial action plan" commences CERCLA's six year limitations period applicable to recovery of costs for a "remedial action." In *Neville*, however, the Ninth Circuit expressly declined to address the limitations period applicable to a non-governmental response cost suit and when it commences. While the Ninth Circuit said there is "likely" to be a "remedial action plan" in place in such a suit, it did not say that one absolutely has to exist in order to commence the limitations period. Consequently, even if the Golder Study was not a "remedial action plan," that does not assist Moses Lake because then, the limitations period commenced in 1989 when Moses Lake initiated physical on-site construction of its "remedial action."[4] Finding the Golder Study constituted Moses Lake's "remedial action plan" was, if anything, to Moses Lake's benefit since it extended the limitations period by two years.

The court is not persuaded that it committed a "clear error" with regard to application of the CERCLA statute of limitations in light of *Neville*. It is not even

---

[4] See p. 19 of October 16, 2006 Order:

> "[I]f what Moses Lake did between 1989 and 1994 constitutes 'remedial action' under CERCLA, the six year limitations period commenced **no later than 1991** with the issuance of the Golder [S]tudy which was Moses Lake's 'remedial action plan' for abating TCE contamination in its Larson Zone wellfield." (Emphasis added).

**ORDER DENYING MOTION**
**TO ALTER OR AMEND ORDER- 9**

1  "clear" whether *Neville* has any application to this case because: 1) what Moses Lake

2  did between 1989 and 1994 amounts to "removal" action and *Neville* did not involve

3  "removal" action; and 2) if what Moses Lake did amounts to "remedial action,"

4  *Neville* does not specifically provide a rule with regard to a non-governmental suit

5  seeking recovery of costs for a "remedial action. Furthermore, if *Neville* applies to

6  a non-governmental suit seeking recovery of costs for a "remedial action," the Golder

7  Study constituted Moses Lake's "remedial action plan" and the six year limitations

8  period commenced no later than issuance of the Golder Study in October 1991.

9

10    **C. MTCA**

11        This court found Moses Lake's MTCA claim is barred by the applicable three

12  year statute of limitations because what Moses Lake did between 1989 and 1994

13  amounted to "independent remedial action," as defined by MTCA[5], and that by 1994,

14  said action had confirmed Moses Lake's "cleanup standards" had been met in that

15  Moses Lake had achieved its goal of restoring a potable supply of water to its Larson

16  System of wells.  This court distinguished the case of *Pacific Sound Resources v.*

17  *Burlington Northern Santa Fe Railway*, 125 P.3d 981, 130 Wn.App. 926 (2005),

18  noting that it involved governmental or agency oversight from the beginning of the

19  cleanup.  In *Pacific Sound Resources*, the Washington Court of Appeals concluded

20  that the earliest the three year limitations period could have been triggered was when

21  EPA  issued its ROD selecting a remedy.  The court of appeals noted that "cleanup

22  standards are not officially adopted until the remedy is selected in the Cleanup Action

23  Plan ("CAP") under the MTCA or in the ROD under CERCLA."  130 Wn.App. at

24  / / /

25

26    ─────────────

27      [5] RCW 70.105D.020(8) defines "independent remedial actions" as

28  "remedial actions conducted without department [of Ecology] oversight or
    approval, and not under an order, agreed order, or consent decree."

**ORDER DENYING MOTION**
**TO ALTER OR AMEND ORDER- 10**

937.  Therefore, until those cleanup standards are officially adopted, it is not possible to determine if "remedial action confirms cleanup standards are met."

The MTCA statute of limitations is not identical to the CERCLA statute of limitations and it is the distinction between the two that is critical to the court's determination whether it has committed a "clear error."  MTCA's three year statute of limitations applies to "remedial action" and, unlike CERCLA does not distinguish between "removal" action and "remedial action" as those terms are defined under CERCLA.  Moreover, unlike CERCLA, MTCA states that a claim for recovery of response costs must be brought within three years "from the date remedial action confirms cleanup standards are met."  RCW 70.105D.080.[6]  This court found Moses Lake's "independent remedial action" confirmed that its cleanup standards had been met:

> Washington Administrative Code ("WAC") regulations define "cleanup standards" as the standards adopted under RCW 70.105D.030(2).  WAC 173-340-200.   The Department of Ecology is required to "[p]ublish and periodically update minimum cleanup standards for remedial actions at least as stringent as the cleanup standards under section 121 of the federal cleanup law, 42 U.S.C. Sec. 9621, and at least as stringent as **all applicable state and federal laws, including health-based standards under state and federal law.**"   RCW 70.105D.030(2)(e).  (Emphasis added).

---

[6]  RCW 70.105D.080 provides in relevant part:

> [A] person may bring a private right of action, including a claim for contribution or for declaratory relief, against any other person liable under RCW 70.105D.040 for the recovery of remedial action costs. . . . .  **An action under this section may be brought after remedial action costs are incurred but must be brought within three years from the date remedial action confirms cleanup standards are met . . . .**

(Emphasis added).

**ORDER DENYING MOTION
TO ALTER OR AMEND ORDER- 11**

> An MCL of 5 ppb of TCE was the applicable "cleanup standard" when Moses Lake undertook "independent remedial action" between 1989 and 1994 to restore safe drinking water in its Larson System of wells, and it remains the standard. This "cleanup standard" did not need to be "confirmed" by EPA or DOE at the time Moses Lake undertook its "independent remedial action." It was and remains the standard officially adopted by the State of Washington since it is undisputed that Moses Lake is in compliance with all DOH[7] regulations and has been authorized by DOH to deliver water from its Larson Zone wells to its customers since it completed the rehabilitation of ML 21 in April 1994.

(October 16, 2006 Order, Ct. Rec. 354 at pp. 22-23). In other words, this court found the MCL of 5 ppb TCE was the applicable health-based "cleanup standard" under state and federal law which Moses Lake had achieved by 1994. It is the standard adopted by the EPA in its National Primary Drinking Water Regulations pursuant to the Safe Drinking Water Act.

In its motion for reconsideration, Moses Lake contends that under MTCA, only formal agency action can confirm that "cleanup standards" have been met in order to trigger the statute of limitations. Moses Lake says this is so because of the "plain language" of RCW 70.105D.080 as confirmed by the Washington Court of Appeals in *Pacific Sound Resources*:

> The MTCA's regulatory scheme suggests a technical meaning for the term "confirm," but neither the Legislature nor DOE has defined what type of remedial action confirms cleanup standards are met in order to trigger the statute of limitations. The dictionary defines confirm as "to make valid by formal assent." [Citation omitted]. Given the significance of private contribution actions in the statutory scheme, we conclude that the Legislature clearly contemplated an official agency decision by using the phrase "confirms cleanup standards are met" in RCW 70.105D.080. The Legislature did not just say that the statute of limitations begins "when cleanup standards are met," but rather when "remedial action *confirms* cleanup standards are met."

130 Wn. App. at 936-37 (emphasis in original).

/ / /

---

[7] Washington Department of Health.

**ORDER DENYING MOTION**
**TO ALTER OR AMEND ORDER- 12**

According to Moses Lake, this "bright-line rule applies irrespective of whether the cleanup is conducted as an independent cleanup, under Ecology's Voluntary Cleanup Program, or as part of an enforcement action." As noted however, *Pacific Sound Resources* did not involve an "independent cleanup," whether wholly independent or subsequently "formalized" by DOE or some other government agency. Furthermore, in its opening *amicus* brief, DOE acknowledges that "[a]t completely independent sites, private parties (typically through consultants) **must figure out themselves what cleanup standards apply based on applicable law and regulation**." (Ct. Rec. 388 at p. 11). (Emphasis added). And in its *amicus* reply brief, DOE asserts that "[a]t wholly independent sites, the statute will begin to run for all independent action taken at the site when cleanup standards are met for the site, without agency involvement." DOE concedes that "independent actors may decide for themselves what cleanup standards apply under MTCA's Cleanup Regulation, and when cleanup standards have been met, at wholly independent sites." (Ct. Rec. 404 at pp. 6-7). In sum, DOE does not believe "official agency action" is necessary to confirm cleanup standards have been met at a "wholly independent site." As discussed *infra*, however, DOE believes "official agency action" is necessary to confirm cleanup standards have been met in situations where an independent site has become "formalized" by government or agency action.

Washington Administrative Code (WAC) 173-340-200[8] states that establishing "cleanup standards" requires specification of the following:

> Hazardous substance concentrations that protect human health and the environment ("cleanup levels");
>
> The location on the **site** where those cleanup levels must be attained ("points of compliance");
>
> Additional regulatory requirements that apply to a cleanup action because of the type of action and/or

---

[8] The regulations found in Title 173, Chapter 340, are those promulgated by DOE pursuant to MTCA. DOE is responsible for the administration of MTCA.

**ORDER DENYING MOTION**
**TO ALTER OR AMEND ORDER- 13**

1      the location of the **site**. These requirements are
2      specified in applicable state and federal laws and
       are generally established in conjunction with the
3      selection of a specific cleanup action.

4   (Emphasis added).[9]   Moses Lake contends this regulatory language shows that

5   "cleanup levels," such as the MCL for TCE, are only one component of "cleanup

6   standards," and a "cleanup standard is not established until cleanup levels for the

7   **entire site** are set and combined with physical locations where compliance will be

8   measured." (Emphasis added).  As applied to the case at bar, Moses Lake says

9   cleanup levels for the entire Moses Lake Wellfield Contamination Superfund Site will

10  not be established and cannot be met until EPA issues its ROD, regardless of whether

11  what Moses Lake did between 1989 and 1994 constitutes an "independent remedial

12  action" which set and met the "cleanup level" for a particular location within the

13  Moses Lake Wellfield Contamination Superfund Site, that being the Larson System

14  of wells (aka "The Larson Zone wellfield").

15      DOE echoes Moses Lake's argument that "cleanup standards" cannot be met

16  until they are met for the Moses Lake Wellfield Contamination Superfund Site  (aka

17  "the Site").  According to DOE, "[m]eeting a cleanup level under MTCA," such as

18  the MCL for TCE, "is a different matter from meeting a cleanup standard," and

19  furthermore:

20      MTCA's statute of limitations has not yet been triggered
        for actions taken independently, because (1) no single
21      cleanup standard has been met **at the Site**, let alone all
        cleanup standards that may be applicable, and (2) as a
22      preliminary matter, EPA has not yet selected the cleanup
        standards that are applicable **to the Site**.

23

24

25

26

27  _____

28      [9] The term "cleanup standards" is not defined in MTCA itself.

**ORDER DENYING MOTION
TO ALTER OR AMEND ORDER- 14**

(Emphasis added).[10]   DOE further asserts that under the definition of "cleanup standards" in WAC 173-340-200, "a cleanup level of 5 ppb TCE does not constitute the cleanup standard for TCE in **groundwater at the Moses Lake Site** because, at minimum, (1) it may not be the applicable cleanup level that protects both 'human health and the environment," and (2) it does not include a geographic component, the "point of compliance" specifying where the cleanup level must be met **at the Site**." (Emphasis added).  According to DOE, "a concentration of 5 ppb may serve to protect human health from contaminated drinking water **at the Moses Lake Site**, but it may not be the most stringent concentration required to protect both human health and the environment for all potential pathways of exposure." (Emphasis added). Furthermore, says DOE, "a different 'cleanup level' may ultimately be chosen by EPA as part of the cleanup standard for TCE in groundwater."

Notably, however, WAC 173-340-200 defines "Site" to mean the same thing as "Facility," and "Facility" is defined as:

> **[A]ny** building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), **well**, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, vessel, or aircraft; **or any site or area** where a hazardous substance, other than a consumer product in consumer use, has been deposited, stored, disposed of, or placed, or otherwise come to be located.

(Emphasis added).[11]   Under this definition, it is reasonable to conclude that each of the Larson Zone contaminated wells was a "site" unto itself and therefore, that it was permissible for "cleanup standards" to be set and confirmed for each of those wells.

---

[10]  In its *amicus* reply (Ct. Rec. 404 at p. 2), DOE says "the statute will begin to run at the same time for *all* actions taken to clean up a site- whether such actions were taken formally or independently- when the site is cleaned up." (Emphasis in original).

[11]  This is identical to the definition contained in MTCA at RCW 70.105D.020(4).

**ORDER DENYING MOTION
TO ALTER OR AMEND ORDER- 15**

It is also reasonable to conclude that the Larson Zone wells constitute "any site or area" where a hazardous substance had been deposited, stored, disposed of, or placed, or otherwise come to be located, and therefore, that it was permissible for "cleanup standards" to be set and confirmed for that "site or area."[12] Moses Lake set the "cleanup level" for its wells at 5 ppb of TCE or less in order to protect "human health and the environment." Those wells constitute the "points of compliance," that being the location on "the site" where the cleanup levels must be attained.

The focus of DOE and Moses Lake is on the "Site" (Moses Lake Wellfield Contamination Superfund Site)[13], the groundwater in the aquifer, and the effort EPA is now taking to remedy that problem. DOE contends Moses Lake's successful independent effort to remedy the drinking water problem in the Larson System wells is irrelevant. DOE asserts that Moses Lake's Larson Project "did not clean up any contamination at the Moses Lake Site, let alone set or meet cleanup standards as they are defined by Wash. Admin. Code 173-340 (MTCA's Cleanup Regulation)." According to DOE, "[t]he City merely tapped into a deeper, uncontaminated aquifer for use as drinking water [and] thus went outside the area of contamination that defined the cleanup Site in order to find groundwater that did not need to be 'cleaned up' before it could be purveyed."

There is no question that Moses Lake's Larson System wells were contaminated with TCE above the 5 ppb MCL. Indeed, in the Complaint it filed asserting CERCLA and MTCA claims against Moses Lake with regard to the Moses

_____

[12] Neither Moses Lake or DOE have cited or discussed the WAC definition of "Facility" in its entirety.

[13] Big "S" "Site" refers specifically to the Moses Lake Wellfield Contamination Superfund Site which EPA placed on the NPL in October 1992. Little "s" "site" refers to "site" in a generic sense, as defined in the WAC regulations.

**ORDER DENYING MOTION
TO ALTER OR AMEND ORDER- 16**

Lake Wellfield Contamination Superfund Site, DOE specifically alleges that Moses Lake "owns water wells . . . that are contaminated with TCE" and refers to "[t]he City's contaminated wells." (Ct. Rec. 1 in CV-05-182-FVS at Paragraphs 1.2 and 5.3).

DOE says *Pacific Sound Resources* is indistinguishable from the case at bar, notwithstanding the alleged "independent remedial action" taken by Moses Lake, because the Moses Lake Wellfield Contamination Superfund Site is "formal" and is "subject to a formal agency-decision making process that establishes the cleanup standards for the Site." According to DOE, once a site is made "formal," the agency overseeing cleanup decides what cleanup standards apply based on applicable law and regulation. As a result, says DOE, the statute of limitations cannot begin to run in the case at bar until EPA decides through a ROD what cleanup standards apply, and subsequently confirms those standards are met. DOE says that independent actions were "allegedly" taken by Moses Lake before "the Site" was formalized. Because of this formalization, DOE contends the statute of limitations cannot run until EPA sets cleanup standards and confirms those standards have been met for the entire Moses Lake Wellfield Contamination Superfund Site.

As Lockheed observes, DOE does not point out exactly what EPA may have done subsequent to Moses Lake's completion of its Larson Project in 1994 that had the effect of "formalizing" that project. It is undisputed that the costs of that project were not incurred pursuant to an order by DOE, EPA, or any other agency. Even though the Moses Lake Wellfield Contamination Superfund Site was placed on the NPL by EPA in October 1992, DOE does not assert that this "formalized" the Larson Project. There appears to be a sound reason for this and that is despite the Site being placed on the NPL in 1992, Moses Lake's Larson Project, which began in 1989 before the Site was placed on the NPL and was completed thereafter in 1994, was undertaken without any order or direction by EPA or any other government agency.

**ORDER DENYING MOTION
TO ALTER OR AMEND ORDER- 17**

1    (See pp. 17-19 of October 16, 2006 Order).[14]

2         Lockheed quotes from the legislative history of the MTCA statute of

3    limitations, RCW 70.105D.080, that "[t]here are two methods by which a clean up

4    required by MTCA may be undertaken: one is under the guidance of the Department

5    of Ecology; the other is an independent clean up conducted by one or more of the

6    responsible parties." (*House Bill Report SSB 5404* at p. 3, Ex. 56 to Ct. Rec. 252).

7    The purpose of RCW 70.105D.080 was to overrule a Washington Supreme Court

8    decision, *Bird-Johnson v. Dana*, 119 Wn.2d 423, 833 P.2d 375 (1992), which

9    "prevent[ed] a person who undertakes an independent clean up under MTCA from

10   seeking contributions from other potentially liable parties," and which required that

11   in order to obtain contribution, DOE had to first order the potentially liable parties

12   to undertake a remedial action, thus having "the disadvantage of requiring the state

13   to expend its resources in evaluating the site and possibly overseeing clean up."

14   (*House Bill Report SSB 5404* at p. 2, Ex. 56 to Ct. Rec. 252).

15        DOE contends that Lockheed confuses when a contribution claim can be

16   brought with when the claim must be brought as required by the statute of limitations.

17   According to DOE:

18             MTCA's contribution provision focuses on "remedial

19             action" for which contribution is sought, allowing a
               party to bring a contribution claim to recover costs for

20             actions that are not a final clean up action, *e.g.* investigations
               or interim actions as soon as costs are incurred for any

21             action. The statute of limitations governing when such a
               claim must be brought, however, does not start to run

22             until "cleanup standards" are met for the Site.

23

24       [14] DOE's Complaint against Moses Lake asserting CERCLA and MTCA

25   claims with regard to the Moses Lake Wellfield Contamination Superfund Site

26   was not filed until June 17, 2005, over ten years after Moses Lake completed its

27   Larson Project. (Ct. Rec. 1 in CV-05-182-FVS). On November 21, 2006,
     pursuant to a joint motion of DOE and Moses Lake, DOE's MTCA claims were

28   dismissed without prejudice. (Ct. Rec. 26 in CV-05-182-FVS).

**ORDER DENYING MOTION**
**TO ALTER OR AMEND ORDER- 18**

1    (*Amicus* Opening Brief, Ct. Rec. 388 at p. 5).

2          Citing various WAC regulations, DOE says that to "formalize" a previously

3    independent site, it will notify parties of their potential liability, and will either

4    negotiate for work to be performed under an order or decree, or will issue an

5    enforcement order.   According to DOE, this will include an assessment of any

6    "interim," as opposed to "final" remedial actions that may have previously been taken

7    at the site, whether formally or independently, to assess their effectiveness in meeting

8    cleanup standards.   In the case  at bar, DOE has done none of this since EPA has

9    been  the  lead  agency  regarding  remediation  of  the  Moses  Lake  Wellfield

10   Contamination Superfund Site.  Moreover, there is no evidence that EPA has made

11   any attempt to transform the Larson Project from an "independent remedial action"

12   into a formal agency action by assessing the effectiveness of that project in meeting

13   cleanup standards.

14          "An interim action is distinguished from a cleanup action in that an interim

15   action only partially addresses the cleanup of a site."  WAC 173-340-430(1).  If each

16   Larson System well is a "site," or the Larson Zone wellfield collectively is "any  site

17   or area" under the WAC definition of "facility," which this court believes is a

18   reasonable conclusion, then what Moses Lake did between 1989 and 1994 (the

19   Larson Project) was not an "independent interim action."  If, however, the relevant

20   "site" is the entire Moses Lake Wellfield Contamination Superfund Site, then what

21   Moses Lake did may well constitute "interim action" under the MTCA, akin to a

22   "removal" action under CERCLA.  Even if what Moses Lake did amounted to an

23   "independent interim action," however, the court is not persuaded that necessarily

24   means Moses Lake could not have set the "cleanup standards" for its "independent

25   interim action" and confirmed they had been met long before DOE or EPA

26   "formalized" anything.  Indeed, WAC 137-340-430(2)(a) recognizes that interim

27   actions may **"[a]chieve cleanup standards for a portion of the site."**  (Emphasis

28   added).

**ORDER DENYING MOTION**
**TO ALTER OR AMEND ORDER- 19**

DOE advances a number of policy arguments in support of its position that the statute of limitations should not begin to run in the case at bar until after "cleanup standards" set by EPA are confirmed by EPA to have been met for the Moses Lake Wellfield Contamination Superfund Site.  Lockheed counters with its own policy arguments in support of its position that with regard to an "independent remedial action," the statute of limitations begins to run after the independent actor confirms that "cleanup standards" set by him have been met.  Lockheed asserts DOE's policy arguments ignore the fundamental premise that a statute of limitations should be a statute of repose, and that RCW 70.105D.080 was adopted so that parties could not be sued long after an "independent remedial action" is completed and when evidence has become stale, witnesses have died, and documents have been lost.

DOE is responsible for administration of MTCA and the promulgation of MTCA regulations and therefore, its policy arguments cannot lightly be disregarded. Ultimately, however, in the absence of any clear statutory guidance or judicial precedent, it is this court's responsibility to determine when the MTCA statute of limitations commences to run with regard to an "independent remedial action," even one that may be "interim" in nature.[15]  This court believes that DOE's interpretation of how the MTCA statute of limitations should operate with regard to "independent remedial actions," whether "interim" or not, and whether "wholly independent" or subsequently "formalized," eviscerates the purpose of a statute of limitations.  This is clearly manifested in the case at bar in which Moses Lake's "independent remedial action" was completed over 12 years ago and yet, after having incurred significant costs with respect to its Larson Project, entering into a tolling agreement with Boeing in 1993, and receiving "PRP Information" in 1994 that included Martin Marietta

---

[15] DOE seemingly would agree based on its acknowledgment that only a court can make a determination whether "substantial equivalence" has been achieved for the purposes of RCW 70.105D.080.  (Ct. Rec. 404 at p. 7 n. 3).

**ORDER DENYING MOTION**
**TO ALTER OR AMEND ORDER- 20**

Corporation (Lockheed's predecessor-in-interest), Moses Lake did not seek to enter into a tolling agreement with Lockheed and waited until 2004 to file this lawsuit. Furthermore, as discussed above, the court's finding that the MTCA limitations period commenced in 1994 is not clearly contrary to WAC regulations and indeed, this court believes is consistent with those regulations in that:  1) each of the Moses Lake's Larson System wells constituted a "site," or the wells collectively constituted "any site or area;" 2) Moses Lake established its own "cleanup standard" for these wells in specifying a "cleanup level," restoring drinking water in the wells to below the 5 ppb MCL for TCE ("a hazardous substance concentration that protected human health and the environment"), and  specifying the location on the "site" ("points of compliance") where the cleanup levels needed to be attained (the individual wells); and 3) by 1994, Moses Lake achieved that "cleanup standard" for its Larson System wells and confirmed for itself the standard had been met.  Alternatively, even if the relevant "site" is the Moses Lake Wellfield Contamination Superfund Site and Moses Lake's "independent remedial action" was "interim" in nature, its Larson Project "achieved cleanup standards for a portion of the site."

## IV.  CONCLUSION

The court did not commit a "clear error" by finding that Moses Lake's CERCLA cost recovery claim against Lockheed for costs incurred between 1989 and 1994 in conjunction with its Larson Project is barred by the CERCLA statute of limitations.  The court did not commit a "clear error" by finding that Moses Lake's MTCA cost recovery claim against Lockheed for those costs is barred by the MTCA statute of limitations.[16]  Accordingly, Moses Lake's "Motion To Alter or Amend The

---

[16]  Moses Lake is time-barred from seeking recovery from Lockheed of costs incurred "between" 1989 and 1994, not costs incurred "prior" to 1994 as stated at p. 32 of the court's October 16 Order which indicated Lockheed was entitled to

**ORDER DENYING MOTION**
**TO ALTER OR AMEND ORDER- 21**

1  Order Granting Lockheed's Motion For Summary Judgment, *Inter Alia*" (Ct. Rec.
2  358) is **DENIED**.

3      Because the court's findings arguably concern questions of first impression
4  under CERCLA and MTCA which have not been fully fleshed out by prior judicial
5  decisions, the court is inclined to direct entry of a final judgment in favor of
6  Lockheed pursuant to Fed. R. Civ. P. 54(b) so as to facilitate an immediate appeal by
7  Moses Lake to the Ninth Circuit Court of Appeals.[17]  The court is inclined to do this
8  regardless of how it will rule on Lockheed's "Motion For Clarification Or, In The
9  Alternative, Summary Judgment On All Remaining Claims Against Lockheed" (Ct.
10 Rec. 365).  A final decision on the 54(b) matter will be made in conjunction with the
11 forthcoming disposition of that motion.

12      **IT IS SO ORDERED**.  The District Executive is directed to enter this order
13 and forward copies to counsel.

14      **DATED** this 7th of December, 2006.

16                    s/ Alan A. McDonald
                 _____
17                    ALAN A. McDONALD
                 Senior United States District Judge

21 _____

22 summary judgment on Moses Lake's claims for declaratory relief under CERCLA
   and MTCA with regard to those costs.

24 [17]  With regard to application of the MTCA statute of limitations to an
   "independent remedial action," the Ninth Circuit may consider certification of that
25 question to the Washington Supreme Court.  Certification by this court was not
26 sought by Moses Lake, presumably because of Moses Lake's position that the
   "plain language" of RCW 70.105D.080, as confirmed by the "bright-line" rule set
27 forth in *Pacific Sound Resources*, controls disposition of the question in the case
28 at bar.

**ORDER DENYING MOTION
TO ALTER OR AMEND ORDER- 22**